

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

May 2, 1939

Honorable E. H. Griffin
County Attorney
Young County
Graham, Texas

Dear Sir:

Opinion No. O-653
Re: Employing Assistant Teachers

We are in receipt of your letter of April 18, 1939, in which you request the opinion of this department upon the question of whether a board of common school trustees may execute valid contracts with three teachers for next year when the present average daily attendance is about 58 pupils. You state that the "school does not have any need for or receive state aid in any manner."

We assume that the trustees in making such contracts will not create a deficiency debt against the district.

You call attention to Article 2750, Revised Civil Statutes which provides:

"Trustees of a district shall make contracts with teachers to teach the public schools of their district, but the compensation to a teacher, under a written contract so made, shall be approved by the county superintendent before the school is taught, stating that the teacher will teach such school for the time and money specified in the contract. The board of trustees shall have authority, whenever the average daily attendance exceeds thirty-five pupils, to employ one competent assistant to every thirty-five pupils of such excess and fractional part thereof exceeding fifteen pupils. All children within the scholastic age residing in such district, though they may have settled in such district since the scholastic census was taken, shall be entitled to receive all the benefits of the schools of such district. In a district that levies a special school tax the trustees shall have the right to increase the salaries of teachers and the scholastic age, and may also have the schools taught longer than six months, if it is deemed advisable."

In Singleton v. Austin, (T.C.A. 1901) 65 . . 686, the court had this statute before it for consideration in a case in which three teachers had been hired but the average daily attendance was less than 85 pupils. The contract of employment had been approved by the county superintendent, but he refused to approve certain salary vouchers issued to the teacher. In holding the contract binding on the district, the court stated:

"Construing together articles 3946, 3959, 3959a and 3961, R. S. 1895 (now contained in articles 2750 & 2749, R. C. S. 1925), we are of opinion that the trustees are therein empowered to ascertain the existence of the facts rendering the employment of assistants necessary; that the exercise of this power is judicial, not minister-ial, rests solely with them, and is a matter with which the teachers have nothing to do. Having exercised the power by appointing the teacher, the discretion thus exercised cannot be disturbed or inquired into in a pro-ceeding of this sort, especially in view of the fact that the county superintendent approved their action in this case, and approved the teacher's contract so made. The governing rule on this question is analogous to that which controls where the legislature is required to pass no special law until notice is given as required by the constitution. If such a law is passed the courts will conclusively presume that they, in the exercise of the judicial power thus conferred, have found the presence of the facts which authorized them to act. Of course, we do not mean to say that the judicial powers of school trustees is in any sense so absolute. If this view of the law is correct, then appellant's wife, the teacher in this case, had the right to accept the employment tendered; and, having bound themselves by a legal contract, the county authorities cannot and ought not to be heard to question the validity of the contract so made. To hold otherwise would be to seriously cripple our public school system, for teachers would then have to ascertain at their peril the existence of the facts authorizing their appointment. Suppose the trustees had actually met and determined that the average daily attendance had reached 85, and had contracted with plaintiff as they did, and suppose she had thereafter actually taught, but the average attendance of 85 had not been maintained after she began, and suppose it was afterwards ascertained that the average daily attendance had never at any time reached eighty-five, and that the trustees had made an honest mistake in so finding;

could it be held, on any sound principle, that the teacher must lose the reward for her services because of this mistake? Or suppose the teacher seeking employment should differ with the trustees as to the facts, and should refuse to contract? The trustees would then be robbed of this necessary discretion, and it would be transferred to teachers not yet in any way connected with the school. This necessary discretion must be placed somewhere, in order to render the system efficient, and it has been distinctly placed in the board of trustees. We hold, therefore, that the attendance was a matter with which the teacher had nothing to do, and that the contract made with her by the board and approved by the superintendent was valid."

In view of the construction placed upon Article 2750 by the court in the foregoing case, you are advised that valid teachers' contracts may be executed by the board of trustees of a common school district under the facts stated, provided, however, that such contracts are approved by the county superintendent.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Cecil C. Cammack_

Cecil C. Cammack
Assistant

CCC:N

APPROVED

ATTORNEY GENERAL OF TEXAS